UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTMAN KODAK COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>KYOCERA CORPORATION<br><br>    Defendant. | Civil Action No. _____<br><br>Judge: _____<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Eastman Kodak Company ("Kodak"), for its Complaint against Kyocera Corporation ("Kyocera"), hereby alleges as follows and demands a jury trial on all the issues so triable.

## NATURE OF THE ACTION

1.    This civil action arises under the laws of the United States and the state of New York and is brought to redress Kyocera's breach of its agreement to compensate Kodak for its use of Kodak's patented digital camera technology.

2.    Founded in 1892, Kodak has a long history of innovation in photography and image processing. Among many other significant inventions, Kodak and its founder, George Eastman, invented photographic plates in 1879, roll-up film in 1883, and the hand-held camera in 1888. Kodak engineers also designed and built the camera that Neil Armstrong used on the first walk on the moon.

3.    Kodak's innovations have continued in the age of digital photography. In 1975, Kodak invented the first digital camera. Since then, Kodak has invested billions of dollars in research and development of digital imaging technology. Kodak's significant investment in research and development has resulted in a continuing stream of improvements to digital

imaging technology—improvements that have led to more than 1,000 Kodak patents in the field of digital imaging. Recognizing the value of Kodak's innovations, most competitors in the digital space have taken licenses to Kodak's digital imaging patents.

4.      In 2002, Kyocera joined the list of licensees to Kodak's digital imaging patents. Kodak and Kyocera entered a license agreement on August 21, 2002 ("Agreement") under which Kodak granted Kyocera the right to make and sell Kodak's patented digital camera technology in exchange for royalty payments and compliance with other requirements. Kodak brings this action because Kyocera has made extensive use of Kodak's digital camera technology but has failed to properly and completely pay for the use of such technology as required by the Agreement.

5.      First, the Agreement requires Kyocera to pay royalties on all portions of its products that contribute to specifically defined "Digital Camera" functionality. However, as Kodak set forth in correspondence to Kyocera, including an April 5, 2010 letter which is incorporated herein by reference, in direct violation of the Agreement, Kyocera has not paid royalties on all the Digital Camera functionality of its products. Instead, Kyocera has paid royalties on only some of the components involved in Digital Camera functionality and has failed to pay royalties on the other components that indisputably contribute to Digital Camera functionality. This is a direct breach of the Agreement and has resulted in a significant underpayment of royalties due.

6.      Second, the Agreement requires Kyocera to calculate royalties using the *sales price* of the Digital Camera products it makes and sells. However, as set forth in Kodak's correspondence to Kyocera (including the April 5, 2010 letter referenced above and incorporated

herein), Kyocera has calculated royalties using the price at which it *purchased* components of Digital Camera products from third parties.

7. Third, as set forth in Kodak's April 5, 2010 correspondence and confirmed by an independent audit, Kyocera failed to report and pay *any* royalties on the sale of thousands of products with Digital Camera functionality. Kyocera's actions violate the requirement in the Agreement that it report and pay royalties on *all* sales of Digital Camera products.

8. Finally, Kyocera effectively concealed the extent of its underpayment by refusing to provide information relating to the accuracy of its payments to Kodak's auditors, also in violation of the Agreement. Kyocera's actions prevented a full audit of its royalty payments and precluded Kodak from determining Kyocera's compliance with the Agreement. This misconduct constitutes a further breach of the Agreement.

9. As a result of Kyocera's actions, Kodak seeks: (1) a declaration pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that the Agreement is valid and that Kyocera has certain obligations under the Agreement; (2) damages resulting from Kyocera's breach of contract; (3) an order and award of specific performance requiring Kyocera to comply with the terms of the Agreement; and (4) all other appropriate remedies to which Kodak is entitled.

10. Kodak repeatedly attempted to resolve this dispute with Kyocera before filing suit. Among other efforts, Kodak met with representatives from Kyocera to discuss Kyocera's failure to perform under the Agreement. On April 5, 2010, Kodak sent a letter asking Kyocera to immediately remedy its breach. Kyocera has refused to take any corrective action.

**PARTIES, JURISDICTION, AND VENUE**

11. Kodak is a corporation organized and existing under the laws of New Jersey with a principal place of business at 343 State Street, Rochester, New York 14650.

12. Upon information and belief, Kyocera is a Japanese corporation with its principal office at 6 Takeda Tobadono-cho, Fushimi-ku, Kyoto-shi 612-8501, Japan.

13. This Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. The amount in controversy exceeds $75,000.

14. This Court also has jurisdiction pursuant to the laws of New York, including the state's long-arm statute, C.P.L.R. § 302(A)(1)-(3), because Kyocera has contracted to do business in New York: (1) Kyocera entered into the Agreement, which is governed by New York law; (2) Kyocera contracted to supply royalty payments to Kodak in New York; (3) Kyocera contracted to provide royalty reports to Kodak in New York; (4) Kyocera breached the Agreement in New York by failing to pay owed royalties; and (5) Kyocera breached the Agreement in New York by failing to provide accurate royalty reports.

15. Venue is proper under 28 U.S.C.A. § 1391 because Kyocera is subject to personal jurisdiction in this district and events giving rise to Kodak's claims occurred in New York.

**FACTUAL ALLEGATIONS**

    A.    **Kodak's License of Digital Camera Technology to Kyocera**

16. Kodak and Kyocera signed the Agreement on August 21, 2002. The effective start date of the Agreement is April 1, 2002, and the Agreement is in force for ten years. The Agreement constitutes the entire agreement between the parties and is governed by New York law.

17. Under the Agreement, Kodak granted Kyocera a license to make and use specifically defined "Digital Camera" technology covered by certain Kodak patents. (Agreement at § 1.2.)

### 1. Kyocera Agreed to Pay Royalties On All Digital Camera Functionality

18. Kyocera agreed to pay royalties based on the net sales of the Digital Camera functionality of the products it sold. (*Id.* at § 1.16.)

19. Kyocera agreed to pay a specific royalty rate on sales of all Digital Camera products it sold under its tradename and a specific royalty rate on sales of all Digital Camera products it sold as an Original Equipment Manufacturer ("OEM") to third-parties. (*Id.* at § 4.2.)

20. Kyocera agreed to calculate the royalties it owed using the sales price of the Digital Camera products it sold. (*Id.* at § 1.16.)

21. Kyocera agreed to pay all royalties due on its sales of Digital Camera products within 45 days following the end of each calendar quarter. (*Id.* at § 5.1.)

22. Kyocera agreed that, if it failed to pay royalties within the prescribed time limit, it also would owe Kodak interest on the unpaid royalties. The additional interest would accrue from the due date to the date payment is made. (*Id.* at § 4.6.)

### 2. Kyocera Agreed to Provide Royalty Reports and Maintain Complete and Accurate Records for Auditing

23. Kyocera also agreed to submit written royalty reports to Kodak within 45 days following the end of each calendar quarter. (*Id.* at § 5.1.) Kyocera agreed to include all its Digital Camera sales and the royalties due on these sales in its reports, among other information. (*Id.*)

24. Kyocera agreed to maintain complete and accurate royalty records for at least 3 years after it submits the royalty reports to Kodak. (*Id.* at § 5.3.) The parties agreed that, once every year, Kodak is entitled to audit Kyocera's royalty records. (*Id.* at § 5.3.)

### B. Kyocera Breached the Agreement

#### 1. Kyocera Failed to Pay Royalties on the "Digital Camera" Functionality of Its Camera Phones

25. As set forth in Kodak's April 5, 2010 correspondence to Kyocera, Kyocera has failed to pay royalties on all the components of its products with Digital Camera functionality. Instead, it has paid royalties on only some of the components with this functionality. This is a direct violation of the agreement. (*Id.* at §§ 1.16, 4.2.)

26. Kyocera's refusal to pay royalties on the full Digital Camera functionality of its products has resulted in a significant underpayment of royalties due.

#### 2. Kyocera Improperly Based Its Royalty Payments on the Purchase Price Rather than Sales Price

27. As set forth in Kodak's April 5, 2010 letter to Kyocera, Kyocera further violated the Agreement because it improperly used (and, upon information and belief, continues to use) the price at which it purportedly purchased a component of certain Digital Camera products from third parties to calculate royalty payments. As explained above, Kyocera agreed to calculate royalties using the *sales price* of the licensed Digital Camera products. (*Id.* at § 1.16.)

#### 3. Kyocera Failed to Report and Pay Royalties on All Digital Camera Sales

28. Kyocera further breached the Agreement by failing to report and pay royalties on all Digital Camera products it has sold.

29. Kyocera agreed to pay royalties on and report *all* sales of Digital Camera products. (*Id.* at §§ 4.2, 4.10, 5.1.) As Kodak outlined in detail in prior correspondence to Kyocera (including its April 5, 2010 letter), according to an independent audit, Kyocera has entirely omitted from its royalty reports and payments the sale of thousands of products with Digital Camera functionality.

### 4. Kyocera Refused to Provide Auditors with Information Relating to the Royalties It Owes

30. Kyocera agreed to maintain complete and accurate records regarding the royalties it owes for at least 3 years after it submits royalty reports to Kodak and, additionally, agreed that Kodak can audit Kyocera's royalty records once a year. (*Id*. at § 5.3.)

31. Kodak has audited Kyocera's royalty payments on two occasions. In both instances, Kyocera refused or failed to provide auditors with complete and accurate records relating to its royalty payments. For example, Kyocera did not provide certain invoices, purchase orders, payment records, product shipments, pricing information, and sales reports. Kyocera also refused to provide certain inventory movement reports, transaction-level sales reports and other transaction-related documentation, product specifications, product samples, bills of material, and pricing information.

32. Kyocera's multiple breaches of the Agreement have injured Kodak. Kyocera's failure to pay all royalties due under the Agreement has damaged Kodak in at least the amount that Kyocera has underpaid royalties and the interest that has accrued pursuant to the terms of the Agreement. Kyocera's failure to submit accurate royalty reports prevented Kodak from learning whether Kyocera underpaid additional royalties (and, if so, by how much), increased the cost and complexity of Kodak's audits of Kyocera's royalty payments and records, and caused Kodak to expend additional time and resources trying to learn what information was missing from Kyocera's reports and otherwise enforce the Agreement. Kyocera's failure to provide the requested information to Kodak's auditors injured Kodak by, among other things, increasing the cost and complexity of both audits, obstructing the work of Kodak's auditors, preventing Kodak from assessing Kyocera's compliance with the terms of the Agreement (including whether

Kyocera was withholding royalties), and forcing Kodak to spend additional time and resources to determine the extent of Kyocera's failure to pay royalties and otherwise enforce the Agreement.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT AS TO LICENSE AGREEMENT

33. Kodak incorporates by reference paragraphs 1 through 32 as if set forth here in their entirety.

34. There is a justiciable controversy within the jurisdiction of this Court between Kodak and Kyocera regarding Kyocera's royalty and reporting obligations under the Agreement. Kodak contends that Kyocera has breached the Agreement by failing to pay all royalties due under the Agreement, failing to submit accurate royalty reports, and failing to provide information to Kodak's auditors. Kyocera disputes this contention and asserts that it has satisfied its obligations under the Agreement.

35. Based on the foregoing allegations, declaratory judgment is necessary to clarify and settle the legal right and duties of the parties under the Agreement and afford relief to Kodak from the uncertainty, insecurity and controversy associated with Kyocera's efforts to evade the requirements of the Agreement.

36. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Kodak seeks a declaration that the Agreement:

   (i) Is valid and enforceable;

   (ii) Requires Kyocera to pay royalties based on all portions of its products that have Digital Camera functionality, and not just some of the components with this functionality;

      (iii)    Requires Kyocera to pay royalties based on the *sales price* of its Digital Camera products;

      (iv)    Requires Kyocera to report and pay royalties on *all* of its sales of Digital Camera technology; and

      (v)    Requires Kyocera to provide Kodak's auditors with all information relating to the royalties it owes Kodak, including the information that Kyocera has failed to provide as described in paragraph 31.

## COUNT II: BREACH OF CONTRACT

37.    Kodak incorporates by reference paragraphs 1 through 36 as if set forth here in their entirety.

38.    The Agreement is a valid and binding contract that was duly executed by Kodak and Kyocera on August 21, 2002.

39.    Kodak has fully performed all of its duties and obligations under the Agreement. Kyocera has breached the Agreement by, among other actions:

      (i)    Not paying royalties on the full Digital Camera functionality of its camera phones;

      (ii)    Calculating royalties on its purchase price rather than the sales price;

      (iii)    Failing to report and pay royalties on the sale of all Digital Camera products; and

      (iv)    Failing to provide Kodak's auditors with all information relating to the royalties it owes Kodak, including the information that Kyocera has failed to provide as described in paragraph 31.

40.   Kyocera separately breached the Agreement each time it failed to pay royalties due under the Agreement, report sales and royalties, and provide complete and accurate records to auditors.

41.   As a direct and proximate result of Kyocera's breach of the Agreement, Kodak has suffered, and continues to suffer damages.  Damages include, but are not limited to: amounts owed under the Agreement, including underpaid and unpaid royalties and interest (which continues to accrue); the increased cost of audits due to Kyocera's failure to accurately report sales and royalties due and make records available to Kodak's auditors; the time and resources Kodak expended negotiating with Kyocera to obtain royalties due under the Agreement and otherwise enforce the Agreement; and other monetary and non-monetary losses for which Kyocera is liable.  Exact damages will be proven at trial.

## PRAYER FOR RELIEF

42.   Kodak respectfully requests the following relief:

(i)   A declaration as described in Paragraph 36 and an order and award of specific performance in accordance with that declaration.

(ii)   Judgment in favor of Kodak and against Kyocera for damages Kodak has suffered due to Kyocera's breach of the Agreement, including underpaid and unpaid royalty payments, interest as provided in the Agreement on all late and overdue royalty payments, damages related to Kyocera's failure to submit accurate royalty reports and failure to provide information to Kodak's auditors, costs incurred by Kodak to enforce the Agreement, and pre-judgment and post-judgment interest as permitted by law.

(iii)   Such other and further relief as this Court deems just and proper.

Respectfully submitted,

EASTMAN KODAK COMPANY

By its attorneys,

Dated: June 22, 2010

*/s/ Paul J. Yesawich, III*
Paul J. Yesawich, III
Harris Beach PLLC
99 Garnsey Road
Pittsford, New York 14534
Tel: (585) 419-8800
Fax: (585) 419-8813
pyesawich@harrisbeach.com
*Attorneys for Plaintiff Eastman Kodak Company*

*Of Counsel*:
Robert D. Cultice
Michael J. Summersgill
WilmerHale LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax:(617) 526-5000

Tonya T. Robinson
WilmerHale LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363