UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EASTMAN KODAK COMPANY,

|                          |                |                          |
|--------------------------|----------------|--------------------------|
|                          | Plaintiff      | DECISION AND ORDER       |
| -vs-                     |                |                          |
|                          |                | 10-CV-6334 CJS           |
| KYOCERA CORPORATION,     |                |                          |
|                          | Defendant      |                          |

_____

APPEARANCES

For Plaintiff:          Paul J. Yesawich, III, Esq.
                        Neal L. Slifkin, Esq.
                        Laura W. Smalley, Esq.
                        Harris Beach LLP
                        99 Garnsey Road
                        Pittsford, New York 14534

                        Robert D. Cultice, Esq.
                        Michael J. Summersgill, Esq.
                        Jordan L. Hirsch, Esq.
                        Wilmer Cutler Pickering Hale and Dorr LLP
                        60 State Street
                        Boston, Massachusetts 02109

For Defendant:          Charles L. Kerr, Esq.
                        Morrison & Foerster
                        1290 Avenue of the Americas, 40th Floor
                        New York, New York 10104

                        David C. Doyle, Esq.
                        William V. O'Connor, Esq.
                        Greg Reilly, Esq.
                        Morrison & Foerster LLP
                        12531 High Bluff Drive, Suite 100
                        San Diego, California 92130

1

INTRODUCTION

This is an action for breach of contract.  Now before the Court is Plaintiff's motion (Docket No. [#105]) for partial summary judgment as to liability.  The application is denied.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case, viewed in the light most-favorable to Kyocera, the non-moving party.  The reader is presumed to be familiar with prior Decisions and Orders of this Court which discuss some of the underlying facts.  *See*, Decision and Order dated April 14, 2011 [#48];  Decision and Order dated September 17, 2012 [#131] (Hon. Marian W. Payson, United States Magistrate Judge).

On August 21, 2002, Eastman Kodak Company ("Kodak") and Kyocera Corporation ("Kyocera") executed the subject Patent Licensing Agreement ("PLA").  At the same time, the parties executed a side letter, between Kodak's Senior Vice President, Willy Shih, and Kyocera's Director, Deputy General Manager, Yoshihiko Nishikawa, clarifying a portion of the PLA. (Hereinafter, "the Side Letter").

The PLA covers both Digital Cameras and Integrated Digital Cameras.[1]  Integrated Digital Cameras are "multi-function devices" such as cell phones that include a camera. The subject dispute is limited to royalties on such Integrated Digital Cameras, and specifically, on camera phones.   The PLA includes the following "Definitions" and

---

[1]At oral argument, Kodak's counsel argued that the PLA actually covers a third category as well, which is "stand alone camera modules" which have all the "functionality" of a Digital Camera as defined in the PLA, which are sold prior to being installed into an integrated device.  As discussed further below, the Court does not find that to be a plausible reading of the PLA, but to the extent that it is, it would not be unambiguous.

provisions:

1.2 'Digital Camera' shall mean a portable, self-contained device utilizing an Area Image Sensor having at-least three hundred thousand (300,000) pixels, as well as electronics and optical elements that captures [sic] still or motion images of visible radiation and (a) records a digital signal representing such images on a Removable Digital Storage Media or (b) stores at least two such images in internal memory.

***

1.7 'Integrated Digital Camera' shall mean an integrated, non-separable, self-contained Multi-Function Device that utilizes an Area Image Sensor which Sensor has greater than three hundred thousand (300,000) pixels as well as electronics and optical elements that captures still or motion images of visible radiation and (a) records a digital signal representing such images on a Removable Digital Storage Media or (b) stores at least two such images in internal memory.

***

1.11 'Licensed Products' shall mean (i) Digital Camera(s) . . . and (ii) for repair or replacement purposes only components of a Digital Camera . . . and (iii) Integrated Digital Camera(s) including without limitation _modules that function as Digital Cameras_, which modules are to be incorporated into Integrated Digital Camera's [sic] but excluding . . . portions of the Integrated Digital Camera exclusively performing non-camera functions, as those functions are described in the definition of a Multi-Function Device herein, e.g. a voice transmitting/receiving cell phone (hereinafter "Non-Camera Portions") . . . .

***

1.15 'Multi-Function Device' shall mean a device that performs as a fully functional stand-alone consumer electronic device providing substantial non-camera functions in addition to those typically provided by a digital camera. Examples of such stand-alone consumer electronic devices providing substantial non-camera functions include, but are not limited to a voice transmitting/receiving cellular telephone.

1.16 'Net Sales' in this Agreement shall be determined based on whether a Digital Camera enters the consumer market as a Kyocera Branded Licensed Product or an OEM Licensed Product as defined below.

3

(cont.)

<u>Kyocera Branded Licensed Product</u>

In the case of an arms length sale or other disposal of a Kyocera Branded Licensed Product, Net Sales shall mean the total net revenue received by Kyocera and its Subsidiaries resulting from the sale or placement of such Kyocera Branded Licensed Product whether through purchase, lease or other commercial transaction . . . .

***

<u>OEM Licensed Product</u>

In the case of an arms length sale or other disposal of a OEM Licensed Product, and which is made with (a) Kyocera's components and/or (b) third party components purchased in an arms length sale, Net Sales shall mean the total net revenue received by Kyocera and its subsidiaries resulting from the sale or placement of such OEM Licensed Product  whether through purchase, lease or other commercial transactions . . . .

***

<u>Integrated Digital Camera Product</u>[2]

As to Integrated Digital Camera [sic], <u>it is understood by the parties that Kyocera, currently through its Optical Equipment Division, sells or disposes of a <i>Digital Camera in the form of a module</i></u> which is to be incorporated into an Integrated Digital Camera either by a Kyocera Subsidiary or a third party or Kyocera's other division.  It is, therefore, agreed by the parties hereto that only with respect to Integrated Digital Cameras, Net Sales shall be the sale price of the <u><i>Digital Camera in the form of a module</i></u> sold or disposed of by Kyocera to a Kyocera Subsidiary or third party or to another Kyocera division with respect to the sale of <u><i>digital camera modules</i></u> prior to the integration of the <u><i>Digital Camera in the form of a module</i></u> into the Integrated Digital Camera, less any Deduction.

In the case where the sale or disposal of a <u><i>Digital Camera in the form of a</i></u>

---

[2]The Court believes from a plain reading of the PLA that "Net Sales" of the subject camera phones is determined by this paragraph of the PLA.  At oral argument, Kodak's counsel argued that the first paragraph of § 1.16, entitled "Kyocera Branded Licensed Products," determines "Net Sales" for such devices, and that the subject paragraph entitled "Integrated Digital Camera Product" actually does not refer to Integrated Digital Camera Products, notwithstanding its heading, but only refers to "stand alone" Digital Camera modules that are sold by Kyocera  prior to being installed in an Integrated Digital Camera Product.  The Court does not find such argument plausible.  In any event, to the extent that Kodak's counsel is correct, such fact  would only increase the ambiguity of the PLA.

*module* to be incorporated into an Integrated Digital Camera has not been sold in an arms length transaction to a Kyocera Subsidiary or a non-affiliated third party or to another Kyocera division with respect to the sale of *digital camera modules*, the Net Sales shall mean Kyocera's open market price to a non-affiliated third party for such *Digital Camera in the form of a module* on the date when such sale occurred less any Deductions or, alternatively, if there is no open market price, an imputed price determined on a commercially reasonable basis to be no less than the price of a commercially available *Digital Camera in the form of a module* which are [sic] in respect of features and functions equal or substantially equivalent to *Kyocera's digital camera module*.

***

1.17  'OEM Licensed Product' shall mean Licensed Product sold or otherwise disposed of under a tradename or trademark that is owned by a third party.

***

4.2  . . .  [I]t is agreed that Kyocera shall pay to Kodak a commuted royalty of two and one-half percent (2.5%) of the worldwide Net Sales of all Kyocera Branded Licensed Products.  It is further agreed that Kyocera shall pay to Kodak a commuted royalty of three percent (3%) of the worldwide Net Sales of all OEM Licensed Products.

***

4.7 This Agreement  is intended to capture the internal transaction business model of Kyocera as it exists on the Effective Date of this Agreement, wherein all Digital Cameras and *Digital Cameras in the form of modules* to be incorporated into Integrated Digital Cameras manufactured by Kyocera or a Kyocera Subsidiary are sold or otherwise disposed of by Kyocera or a Kyocera Subsidiary to any third party or Kyocera retail Subsidiary in any part of the world.

***

4.8  Kyocera warranties that all Digital Cameras and *Digital Cameras in the form of modules* to be incorporated into Integrated Digital Cameras sold or disposed of by Kyocera or its Subsidiaries before or during the term of this Agreement have been or will be manufactured by Kyocera or [sic] Kyocera manufacturing Subsidiary and sold by Kyocera or a Kyocera Subsidiary.

***

9.4  This Agreement which shall be governed by the substantive laws of New

5

York State . . . constitutes the entire Agreement between the parties with respect to the subject matter hereof.  Any modification of this Agreement shall be set forth in writing and duly executed by both parties.

(emphasis added).

As mentioned earlier, when the parties executed the PLA, they also signed the Side Letter, which states, in pertinent part:

This letter confirms the following understanding reached between Kyocera and Kodak regarding the sales price of _digital camera modules_ sold by your Optical Equipment Division to the Communication Equipment Division for incorporation into a multifunction integrated digital camera.

When the Optical Equipment Division sells _digital camera modules_ to both the Communication Equipment Division and to any third party, the sales price used for determining the applicable royalty due Kodak on the _digital camera modules_ sold to the Communication Equipment Division shall be the 'Net Sales' as defined in Paragraph 1.16 of the PLA.  In the event, however, the Optical Equipment Division before selling _digital camera modules_ to any third party initially sells _such modules_ only to the Communication Equipment Division, the sales price used for determining the applicable royalty due Kodak shall be one hundred ten percent (110%) of the internal sales price to the Communication Equipment Division.

(Side Letter dated signed August 21, 2002).

For several years after the execution of the PLA, Kyocera paid royalties to Kodak for Integrated Digital Cameras, based on the sales price of the "camera modules" that, at all relevant times, it manufactured for use in camera phones.  It is undisputed that such "camera modules" do not meet the full definition of a "Digital Camera" contained in PLA § 1.2.  That is, Kyocera's "camera modules" are not, in and of themselves, fully functioning digital cameras.  Instead, such modules work together with other components of the camera phone that are shared between the phone and camera aspects of the integrated

6

device, such as the image processor, liquid crystal display ("LCD"), internal memory, power management circuit, and keypad.[3]

On June 22, 2010, Kodak commenced this action, alleging that Kyocera breached the PLA with regard to Integrated Digital Cameras, by paying royalties based on Net Sales of its "camera modules," rather than on "all portions of its products that contribute to specifically defined 'Digital Camera' functionality." Complaint [#1] ¶ 5.  Kodak alleges that,

> Kyocera has paid royalties on only some of the components involved in Digital Camera functionality and has failed to pay royalties on the other components that indisputably contribute to Digital Camera functionality.  This is a direct breach of the [PLA] and has resulted in a significant underpayment of royalties due.

*Id*.  As this statement indicates, Kodak insists that Kyocera must pay royalties on every part of its camera phones that contribute to the picture-taking function, including those that are not part of Kyocera's "camera module."   On this point, Kodak relies largely on the PLA's definition of "Licensed Products," set forth above, which, in pertinent part, excludes only those "portions of the Integrated Digital Camera exclusively performing non-camera functions."

"Kyocera maintains, by contrast, that the PLA's definition of 'Net Sales' limits its royalty payments to the camera module." *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-CV-6334 CJS, 2012 WL 4103811 at *6 (W.D.N.Y. Sep. 17, 2012) (Payson, M.J.).  In that regard, Kyocera states that royalties are based on "Net Sales," and PLA § 1.16, defining

---

[3]Kodak argues that, at some point in time, Kyocera actually did make a "Digital Camera in the form of a module," which,  under its interpretation of the PLA, means a module, designed to be later installed into a multi-function device, that by itself meets the PLA's definition of a "Digital Camera."  In that regard, Kodak relies solely on the deposition testimony of Kyocera's 30(b)(6) witness, Hiroo Iwabu, which is somewhat equivocal on that point when viewed in its entirety. Iwabu Dep. p. 148.  However, Kyocera adamantly maintains that it never manufactured such a module, and that in fact, no company ever has.

such "Net Sales" for Integrated Digital Camera Products, is specifically based on the sales price of Kyocera's camera modules.  Kyocera indicates that even though the PLA uses the phrase "Digital Camera in the form of a module," it refers to Kyocera's camera modules, which do not, by themselves, satisfy the definition of a "Digital Camera" set forth in PLA § 1.2.  Kyocera disagrees with Kodak's argument that such modules must satisfy the definition of "Digital Camera" found in § 1.2 of the PLA.  Kyocera states, on that point that the PLA does not specifically define the term "Digital Camera in the form of a module," and that the PLA uses that term interchangeably with other terms, such as "modules that function as Digital Cameras," § 1.11, and "digital camera modules," § 1.16.  Kyocera further maintains that its interpretation is supported by the Side Letter, which uses the term "digital camera module" in reference to PLA § 1.16, and never uses the term "Digital Camera in the form of a module."  Kyocera argues, therefore, that it has not breached the PLA, since it has paid royalties based on the sales price of its camera modules, as required by the PLA.

Following pretrial discovery, Kodak filed the subject motion for partial summary judgment as to liability.  Kodak contends that the PLA unambiguously supports its position, as a matter of law.  Kyocera opposes the application, and contends that the PLA is "riddled with ambiguity."[4]  On October 4, 2012, counsel for the parties appeared before the undersigned.

---

[4]*See* comments of David C. Doyle, Esq. during oral argument.

ANALYSIS

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied."  11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

This contract action is governed by the substantive law of New York State, which is well settled.

> Under New York law, the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.  In a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous. Whether a written contract is ambiguous is a question of law for the court.  Ambiguity is determined by looking within the four corners of the document, not to outside sources.  Contract language presents no ambiguity where it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which

there is no reasonable basis for a difference of opinion.  But, the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

In determining whether a contract is ambiguous, the court must read the integrated agreement as a whole.  If the document as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement.

*Eastman Kodak Co. v. Asia Optical Co., Inc.*, No. 11 Civ. 6036(DLC), 2012 WL 917393 at *3-4 (S.D.N.Y. Mar. 16, 2012) (citations and internal quotation marks omitted).

Under New York law, where a contract is ambiguous, summary judgment cannot be granted. *See, Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed.Appx. 4, 7 (2d Cir. Mar. 8, 2012) ("In a contract dispute, generally, a motion for summary judgment may be granted only when the contract language is wholly unambiguous and conveys a definite meaning.") (citation and internal quotation marks omitted).

Furthermore, "[u]nder New York law, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together." *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 233 (2d Cir. 1991).   Accordingly, in considering whether the subject PLA is ambiguous, the Court must examine both the PLA and the Side Letter which was executed the same day, since the Side Letter specifically addresses and clarifies part of the PLA, involving "the sales price of digital camera modules sold by [Kyocera's] Optical Division to [its] Communication Equipment Division for incorporation into a multifunction integrated digital camera."   With these general principles established, the Court will consider the

merits of Kodak's motion for partial summary judgment.

Kodak contends that the PLA is unambiguous, and can be only interpreted to mean that Kyocera must pay royalties on "the full digital camera portion" of its camera phones, meaning every part that performs "camera functions." Kodak maintains that Kyocera must pay a royalty on such parts, even if those parts are also involved in performing non-camera functions. On that point, Kodak relies on PLA § 1.11, "Licensed Products," which includes, as licensed products, "modules that function as Digital Cameras," but excludes "portions of the Integrated Digital Camera exclusively performing non-camera functions."

Kyocera disagrees, but has not cross-moved for summary judgment, since it maintains that the PLA is ambiguous. In that regard, Kyocera relies on that portion of PLA § 1.16 that specifically deals with "Net Sales" of Integrated Digital Camera Products. According to Kyocera, this section clearly indicates that Net Sales are based on sales of its "camera modules."

In the Court's view, the PLA is ambiguous. The subject dispute is over the amount of royalties to be paid to Kodak, and such royalties are based on Net Sales, as defined in PLA § 1.16. Significantly, the relevant portion of that section begins by reciting that Kyocera "*currently*, through its Optical Equipment Division, sells or disposes of a Digital Camera in the form of a module." (emphasis added). The section then goes on to agree that "Net Sales" of Integrated Digital Camera Products are the sales of those very "Digital Cameras in the form of a module." However, the PLA does not define the term "Digital Camera in the form of a module." The PLA also uses terms such as "digital camera module," while the Side Letter, which specifically pertains to § 1.16, never uses the term "Digital Camera in the form of a module," but instead, uses the term "digital camera

modules."   At the time the PLA was executed, Kyocera manufactured a "digital camera module."  On these facts, it could reasonably be understood that the parties intended that Net Sales of Integrated Digital Camera Products would be based on sales of Kyocera's "digital camera modules," without regard to whether such modules meet the PLA's definition of a "Digital Camera."  Since the PLA is ambiguous, the Court cannot grant summary judgment.

CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for partial summary judgment [#105] is denied.

SO ORDERED.

Dated:        Rochester, New York
              October 22, 2012

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge